UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-CV-449 JCM (PAL) |
| Plaintiff(s), | ORDER |
| v. | |
| ANTELOPE HOMEOWNERS' ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP's ("BANA") motion for summary judgment. (ECF No. 30). Defendants Las Vegas Development Group, LLC ("LVDG") (ECF No. 40) and Antelope Homeowners' Association (the "HOA") (ECF No. 41) filed responses, to which BANA replied (ECF Nos. 59, 60).

Also before the court is the HOA's motion for summary judgment. (ECF No. 31).[1] BANA filed a response (ECF No. 39), to which the HOA replied (ECF No. 42).

Also before the court is a stipulation to stay the case. (ECF No. 58).

**I.    Facts**

This case involves a dispute over real property located at 7828 Garden Rock St., Las Vegas, NV 89149 (the "property").

On July 2, 2008, Tony Barrios, Justo Barrios, and Kristina Barrios obtained a loan from Universal American Mortgage Company, LLC in the amount of $214,621.00, which was secured

---

[1] Also before the court is a stipulation for extension of time (ECF Nos. 36, 38), which the court will grant *nunc pro tunc* to November 18, 2016.

by a deed of trust recorded on July 14, 2008. (ECF No. 1 at 3–4). The note and deed of trust are insured by the Federal Housing Administration ("FHA"). (ECF No. 1 at 4).

On June 25, 2009, defendant Alessi & Koenig, LLC ("A&K"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,002.74. (ECF No. 1 at 4). On August 31, 2009, A&K recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $1,921.79. (ECF No. 1 at 4).

On August 9, 2010, A&K recorded a notice of trustee's sale, stating an amount due of $4,078.25 and scheduling the trustee's sale for September 8, 2010. (ECF No. 1 at 4).

On March 2, 2011, Las Vegas Development Group, LLC ("LVDG") purchased the property at the foreclosure sale for $4,666.00. (ECF No. 1 at 5). A foreclosure deed in favor of LVDG was recorded on March 11, 2011. (ECF No. 1 at 5).

After the foreclosure sale extinguished the deed of trust, the deed was assigned to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("BAC") via an assignment of deed of trust recorded June 20, 2011. (ECF No. 1 at 4). BAC merged into BANA effective July 1, 2011. (ECF No. 1 at 4).

On March 2, 2016, BANA filed the underlying complaint, alleging four claims for relief: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against the HOA and A&K; (3) wrongful foreclosure against the HOA and A&K; and (4) injunctive relief against LVDG. (ECF No. 1).

Clerk's entry of default as to A&K was entered on October 21, 2016. (ECF No. 33). Subsequently, on January 24, 2017, the court dismissed claims (2) though (4) of BANA's complaint. (ECF No. 57).

In the instant motions, BANA (ECF No. 30) and the HOA (ECF No. 31) both move for summary judgment in their favor. The court will address each as it sees fit.

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a

1 judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is
2 "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,
3 323–24 (1986).

4 For purposes of summary judgment, disputed factual issues should be construed in favor
5 of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be
6 entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts
7 showing that there is a genuine issue for trial." *Id.*

8 In determining summary judgment, a court applies a burden-shifting analysis. The moving
9 party must first satisfy its initial burden. "When the party moving for summary judgment would
10 bear the burden of proof at trial, it must come forward with evidence which would entitle it to a
11 directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has
12 the initial burden of establishing the absence of a genuine issue of fact on each issue material to
13 its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)
14 (citations omitted).

15 By contrast, when the nonmoving party bears the burden of proving the claim or defense,
16 the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
17 element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed
18 to make a showing sufficient to establish an element essential to that party's case on which that
19 party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving
20 party fails to meet its initial burden, summary judgment must be denied and the court need not
21 consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–
22 60 (1970).

23 If the moving party satisfies its initial burden, the burden then shifts to the opposing party
24 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
25 *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the
26 opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient
27 that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
28

**James C. Mahan**
**U.S. District Judge**

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

**A. Quiet Title/Declaratory Relief**

As an initial matter, the court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 30-1); notice of delinquent assessment (ECF No. 30-4); notice of default and election to sell (ECF No. 30-5); notice of trustee's sale (ECF No. 30-6); and trustee's deed upon sale (ECF No. 30-7). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and

citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

In its motion, BANA argues that summary judgment in its favor is proper based on *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*") and the supremacy clause. (ECF No. 30). BANA further contends that the foreclosure sale was commercially unreasonable and that *SFR Investment Pool 1 v. U.S. Bank*, 334 P.3d 408 (Nev. 2014) ("*SFR Investments*") should not be applied retroactively. (ECF No. 30).

### 1. *Deed Recitals*[2]

Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see*

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2010–11, when the events giving rise to this litigation occurred.

**James C. Mahan**
**U.S. District Judge**

- 5 -

*also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[3] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the court has taken judicial notice of the recorded trustee's deed upon sale in favor of LVDG. Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the

---

[3] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle defendants to success against BANA's quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether BANA has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

As discussed in further detail below, the court finds that BANA has failed to demonstrate sufficient grounds to justify setting aside the foreclosure sale.

### 2. *Due Process*

In *Bourne Valley*, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

BANA fails on both prongs. BANA has failed to show that the foreclosure sale deprived BANA of any constitutionally protected property interest or that it was entitled to any notice as BANA had no interest in the property at the time of the foreclosure sale. The purported deed of trust was not assigned to BANA until months after the foreclosure sale had already occurred. Specifically, the foreclosure sale occurred on March 2, 2011, and the purported deed of trust was not assigned to BANA until June 20, 2011. Thus, BANA has no standing to challenge the foreclosure sale on due process grounds.

Accordingly, BANA's due process argument fails as a matter of law and *Bourne Valley* provides no support for BANA's quiet title claim.

### 3. *Supremacy Clause*

BANA argues that the HOA lien statute cannot interfere with the federal mortgage insurance program or extinguish mortgage interests insured by the FHA. (ECF No. 30 at 9–15).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with the purposes of the FHA insurance program. Specifically, it hinders HUD's ability to recoup funds from insured properties. As this court previously stated in *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS

116.3116 may not extinguish a federally-insured loan. No. 2:13–CV–1199 JCM (VCF), 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015).

However, the instant case is distinguishable from these cases in that, here, FHA is not a named party. Thus, this argument provides no support for BANA as the outcome of the instant case has no bearing on FHA's ability to quiet title.

### *4. Commercial Reasonableness*

BANA contends that judgment in its favor is appropriate because the sale of the property for 95% of its fair market value is grossly inadequate as a matter of law. (ECF No. 30 at 15–18). BANA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 30 at 16) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58

---

[4] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

(D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BANA's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, BANA fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale.

BANA argues that the HOA's covenants, conditions, and restrictions ("CC&Rs") "necessarily chilled bidding and resulted in unfairness." (ECF No. 30 at 18). This argument fails because BANA misrepresents the content of the CC&Rs and because the foreclosure proceedings in this case derive from NRS Chapter 116, not the CC&Rs. *See* Nev. Rev. Stat. § 116.31162. BANA's reading of the CC&Rs is inconsistent with the holding in *SFR Investments*. 334 P.3d at 419; *see also 7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.*, 979 F. Supp. 2d 1142, 1152–53 (D. Nev. 2013). Moreover, BANA does not present evidence of bidders being dissuaded "from offering a commercially reasonable price" such that bidding on the property was, in fact, "chilled." (ECF No. 30 at 18).

Further, the holding in *ZZYZZX2 v. Dizon* had a showing of affirmative misrepresentation; no such misrepresentation was made directly to BANA by the HOA or its trustee. No. 13-cv-1307-JCM-PAL, 2016 WL 1181666, at *5 (D. Nev. Mar. 25, 2016) ("The association sent a letter to Wells Fargo and other interested parties stating that its foreclosure would not affect the senior lender/mortgage holder's lien.").

Accordingly, BANA's commercial reasonability argument fails as a matter of law as it failed to set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### 5. *Retroactivity*

BANA contends that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 30 at 19).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC*

*Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case.

In light of the foregoing, the court finds that BANA has failed to show that it is entitled to judgment as a matter of law on its quiet title claim. Specifically, BANA has failed to show that its claim to the property is superior to that of LVDG's claim. Nor has BANA raised a genuine dispute of material fact so as to preclude summary judgment in favor of the HOA and LVDG and against BANA on BANA's quiet title claim.

Accordingly, the court will deny BANA's motion for summary judgment (ECF No. 30) and grant the HOA's motion for summary judgment (ECF No. 31).

**B. Stipulation to Stay** (ECF No. 58)

On April 5, 2017, BANA, the HOA, and LVDG (collectively, as "the parties) filed a stipulation, wherein the parties agreed to stay the case based on A&K's chapter 7 petition and pending the final resolution of the certiorari proceedings before the United States Supreme Court for *Bourne Valley Court Trust v.Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), and *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage, a Div. of Wells Fargo Bank, N.A.*, 133 Nev. Adv. Op. 5, --- P.3d ----, 2017 WL 398426 (Nev. Jan. 26, 2017). (ECF No. 58).

A&K's bankruptcy proceedings, however, have no bearing on the resolution of the case between BANA, the HOA, and LVDG. The same is true as to the certiorari proceedings those cases. Accordingly, the court will deny the parties' stipulation to stay the case.

. . .

. . .

. . .

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for summary judgment (ECF No. 30) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 31) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the stipulation for extension of time (ECF Nos 36, 38) be, and the same hereby is, GRANTED *nunc pro tunc* to November 18, 2016.

IT IS FURTHER ORDERED that the stipulation to stay the case (ECF No. 58) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment against BANA and for the HOA and LVDG on BANA's quiet title claim.

DATED June 23, 2017.

_____
UNITED STATES DISTRICT JUDGE